UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMA LEE BRUCE,

    *Plaintiff*,

v.                                    CASE NO. 10-CV-10426

COMMISSIONER OF                DISTRICT JUDGE MARIANNE O. BATTANI
SOCIAL SECURITY,                  MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

(DIB) benefits, and supplemental security income (SSI) benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 17, 18.)

Plaintiff was 59 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 8 at 46, 84, 89.) Plaintiff's employment history includes work as an office manager for a sugar company from 1981 through 2006. (Tr. at 114.) Plaintiff last worked in 2006. (*Id.*)

Plaintiff filed the instant claims (DIB and SSI) on February 7, 2007, alleging that she became unable to work on October 1, 2006. (Tr. at 84-92.) The claims were denied at the initial administrative stages. (Tr. at 42.) In denying Plaintiff's claims, the Defendant Commissioner considered rheumatoid arthritis, other inflammatory arthropathies, and essential hypertension as possible bases of disability. (*Id.*) On September 24, 2008, Plaintiff appeared before Administrative Law Judge ("ALJ") E. James Gildea via videoconferencing, who considered the application for benefits *de novo*. (Tr. at 42-52.) In a decision dated November 28, 2008, the ALJ found that Plaintiff was not disabled. (Tr. at 51-52.) Plaintiff requested a review of this decision on January 21, 2009. (Tr. at 6.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on December 9, 2009, when, after the review of additional exhibits[2] (Tr. at 5, 147-54), the Appeals Council denied Plaintiff's request for review.

---

[2]In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

(Tr. at 1-3.) On February 1, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.    Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse*

*v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C. Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program (SSI) of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

5

or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the

national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since October 1, 2006, the alleged onset date, and that Plaintiff met the insured status requirements through December 31, 2010. (Tr. at 48.) At step two, the ALJ found that Plaintiff's osteoarthritis was "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 48-49.) At step four, the ALJ found that Plaintiff is able to perform her past relevant work as an office manager. (Tr. at 52.) Under an alternative analysis at Step Five, the ALJ found that Plaintiff retained the residual functional capacity to perform a full range of light work. (Tr. at 49-52.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 49-52.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has been treated for osteoarthritis since 2006. (Tr. at 157.) In July 2006, Scott Reiter, D.O., assessed Plaintiff's back pain and "somatic dysfunction of the ribs, intrathoracic region," and continued Plaintiff on Naprosyn, indicating that Plaintiff could return if her symptoms became worse. (Tr. at 179.) In October 2006, because Plaintiff was experiencing pain, an x-ray was taken of her left wrist. It revealed "degenerative changes of the first metacarpal joint," but was otherwise normal. (Tr. at 161.)

In December 2006, Plaintiff was referred to Jonathon Rene, M.D., in Saginaw, Michigan, toward the goal of reducing the pain in her thumbs as much as feasible. (Tr. at 157.) Dr. Rene prescribed a trial of the prescription drug Omacor for pain in hopes that it would not cause the stomach irritation Plaintiff experienced while on Naproxen. (*Id.*)

In April 2007, Plaintiff was examined by a Disability Determination Services (DDS) physician who concluded that Plaintiff has "arthritis of the hands":

> This is mostly due to chronic repetitious work and does appear to be involving mostly her C-MC joints. She was able to do manipulative tasks today and her pincher grasp was well preserved. Much of her symptoms now are due to pain. She may require operative intervention in the future. There was no evidence of neuropathy.

(Tr. at 169.)

In June 2007, Paul Penfold, a physician's assistant in Dr. Reiter's office, noted that the "main area that bothers [Plaintiff] is bilateral hand pain" that "is not new." (Tr. at 180.) Mr. Penfold also noted that Plaintiff "did use the bilateral resting thumb splints and they did give relief for a period of time, but they do not really seem to help anymore." (*Id.*) He also noted that "Omacor is too expensive and she is going to switch over to over-the-counter fish oil; . . . [she] tells me that the hand pain prevents her from doing work and she is seeking to go on disability . . . ." (*Id.*) Plaintiff's examination revealed that she "might have the start of some Heberden's nodes" on her hands. (*Id.*) It was also noted that Plaintiff has a family history of rheumatoid arthritis, so "we are going to check an ANA, rheumatoid factor, sed rate, and C-reactive protein." (*Id.*)

In June 2007, x-rays of Plaintiff's wrists were "negative" except for "[m]arked osteoarthritic changes involving the first carpal metacarpal joint bilaterally." (Tr. at 183.) X-rays of Plaintiff's hands were negative except for "degenerative changes at the first carpal metacarpal joints

8

bilaterally." (*Id.*)  X-rays of Plaintiff's lumbosacral spine showed "degenerative changes involving the fact joints at L4-5 and L5-S1 bilaterally," "mild marginal lipping throughout the lumbar spine," and "minimal dextroscoliosis of the dorsolumbar spine." (Tr. at 183-84.)

The next month, Mr. Penfold indicated that Plaintiff complained of stomach upset on Anaprox, so he recommended she try "Tylenol Arthritis." (Tr. at 185.)  Plaintiff also reported jaw pain, which was "suspicious for temporomandibular joint dysfunction [TMJ]." (*Id.*)

In August 2007, Dr. Reiter's office noted that Plaintiff had returned to using Omacor, rather than fish oil, and Naprosyn, but was "still having a significant amount of pain." (Tr. at 186.)  It was also noted that Plaintiff's use of the splints prescribed by Dr. Rene helped her thumbs but caused "the rest of her hands [to] start hurting more so she trades one pain for another." (Tr. at 186.)  The possibilities of using narcotics and/or occupational therapy were discussed but Plaintiff was not interested in either of those options. (*Id.*)  Since Dr. Reiter's office did "not have much to offer her here, [] we did agree on sending her to a second rheumatologist to see about advanced treatment options," i.e., "Dr. Anwar who is in Caro." (*Id.*)

In August 2007, Farrukh Anwar, M.D., diagnosed "[d]iffuse degenerative joint disease" and "possible superimposed crystalline arthropathy." (Tr. at 193.)

In September 2007, Mark Guilfoyle, D.O., noted a "slight arthritic narrowing of the medial compartment" of Plaintiff's right knee. (Tr. at 188.)  In March 2008, Dr. Guilfoyle indicated that a cervical spine evaluation revealed "evidence of degenerative disc disease at C5-6 and C6-7," "marginal osteophytic spurring arises from the C5-7 vertebra," and "bilateral uncovertebral arthritis at C4-5." (Tr. at 191.)  In April 2008, Dr. Reiter stated that Plaintiff "has osteoarthritis and degenerative joint disease," has "daily pain in her hands," and that although the condition has been treated, they "have achieved less than satisfactory results." (Tr. at 192.)  Dr. Reiter's office

recommended that the "decision regarding Rama Bruce's ability to do work-related activities on a day-to-day basis in a regular work setting is best accomplished through functional capacity testing." (Tr. at 192.)

A Physical Residual Functional Capacity (RFC) Assessment concluded that Plaintiff was able to occasionally lift up to 50 pounds, frequently lift up to 25 pounds, stand or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and that she was occasionally limited in the postural area except for being frequently limited in balancing, but had no manipulative, visual, communicative, or environmental limitations. (Tr. at 172-76.) There was no treating source opinion for comparison. (Tr. at 177.) The office notes concluded that Plaintiff is "not satisfied with the pain relief that she is getting from the Naprosyn." (Tr. at 181.)

In Plaintiff's Daily Function Report, she indicated that she is able to take care of her own personal hygiene, prepare her own meals, read, watch television, go to the store or post office as needed, drive a car, go outside each day, shop once a week for 2-3 hours with her husband, do light housework and laundry, take care of banking and bill-paying online, play cards as long as someone else shuffles, talk on the telephone, and get together with others, but that she is no longer able to tie shoes, use a can opener, open jars, button shirts, clip nails, sit for longer periods, or type or write well. (Tr. at 121-25.) Plaintiff also indicated that she has had a "small income tax business for the past 22 years . . . [and] have been doing 1-2 tax returns a day but not everyday" during the tax season. (Tr. at 128.)

At the administrative hearing, Plaintiff testified that she accepted an "early retirement" and settlement package from her employer in 2006. (Tr. at 13.) Plaintiff was an office manager whose "biggest responsibility was doing payroll and servicing the growers." (Tr. at 14.) She performed "keyboarding" about "50 percent" of the time while the rest of her time was spent waiting on

people at the counter, answering phone calls, and filing. (Tr. at 14.) Plaintiff testified that she had received a "bad review on [her] job performance" prior to being given early retirement and that the only criticism she could remember was that her "attitude wasn't good." (Tr. at 15.) Plaintiff indicated that she takes pain medications "[m]aybe three times a week." (Tr. at 16.)

Plaintiff also testified that she and her husband had gone on a vacation to Las Vegas several weeks before the administrative hearing, that she spent about "half a day" at the casinos and went "through some of the gift shops, stuff like that." (Tr. at 33.) She also testified that they attended "one, two, three" shows while vacationing. (Tr. at 34.)

Based on Plaintiff's description of her past work, the vocational expert (VE) testified that Plaintiff's prior work was "skilled at sedentary" and that her past work would involve frequent fingering, i.e. about two-thirds of the time. (Tr. at 39.) The VE indicated that the testimony was consistent with the Dictionary of Occupational Titles (DOT). (*Id.*)

### F. Analysis and Conclusions

#### 1. Legal Standards

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than [her] ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

In determining the level of exertion required by prior work, the testimony of the VE should be compared to the DOT. *Bauer v. Barnhart*, 168 Fed. App'x 719 (6th Cir. 2006). Simply asking the VE if his testimony is consistent with the DOT satisfies the requirements under Social Security Regulation 00-4p. *Martin v. Comm'r of Social Security*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006).

Alternatively, the ALJ determined that during the time she qualified for benefits, Plaintiff possessed the residual functional capacity to perform a full range of light work. (Tr. at 49-52.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 12.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ erroneously failed to assign the proper weight to evidence of Plaintiff's treating physicians (Doc. 12 at 8-11) and, correspondingly, by failing to incorporate the restrictions given by the treating physicians when concluding that Plaintiff could perform her past relevant work. (Doc. 12 at 12-14.) Plaintiff also contends that it was inappropriate for the ALJ to find she that could perform her past relevant work when the consultative physician noted that the cause of the arthritis in her hands was likely due to the repetitious work done in her past job. (Doc. 18 at 4.)

Although Plaintiff contends that the ALJ committed error by making the "assumption" that there were no recommended restrictions given by any of Plaintiff's treating physicians (Doc. 12 at 12), after review of the record, I have not found any such restrictions. There is certainly evidence that Plaintiff has osteoarthritis and has been treated for this condition since 2006, the year in which her employment ended. (Tr. at 157, 161, 179, 180, 186, 193.) However, while Plaintiff contends that Dr. Rene "opined that the severity of Rama Bruce's pain was causing her difficulty in performing her activities of daily living" (Doc. 12 at 12; Tr. at 186), I note that the quotation is found under the heading "subjective" in Dr. Rene's report. (Tr. at 186.) I therefore suggest that this is not an opinion of Dr. Rene's, but rather a report on Plaintiff's description of her own condition. Even if it were a medical opinion, it does not state any necessary "restrictions" and is too vague to lend any insight into the doctor's opinions as to Plaintiff's specific abilities. Dr. Reiter expressly avoided any functional capacity analysis and instead recommended that functional capacity testing be conducted. (Tr. at 192.)

The RFC Assessment was consistent with the ALJ's finding that Plaintiff could return to her former work, which was skilled and sedentary. (Tr. at 39, 172-76.) Finally, Plaintiff's own description of her daily activities supports the functional capacity assessment as well, i.e., that she

13

is able to take care of her own personal hygiene, prepare her own meals, read, watch television, go to the store or post office as needed, drive a car, go outside each day, shop once a week for 2-3 hours with her husband, do light housework and laundry, take care of banking and bill paying online, play cards as long as someone else shuffles, talk on the telephone, get together with others and prepare income taxes. (Tr. at 121-28.)

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail

14

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                          s/ Charles E Binder
Dated: December 9, 2010                    CHARLES E. BINDER
                                      United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: December 9, 2010                      By    s/Patricia T. Morris
                                                                    Law Clerk to Magistrate Judge Binder