UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMA LEE BRUCE,

          Plaintiff,                            CASE NO. 10-10426

      v.                                HON. MARIANNE O. BATTANI

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.
_____/

**OPINION AND ORDER OF THE COURT ADOPTING REPORT AND
RECOMMENDATION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff Rama Lee Bruce brings this action pursuant to 42 U.S.C. § 405(g),
challenging the final decision of the Commissioner denying her application for disability
insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 et seq.
Plaintiff filed her claim on January 26, 2007, alleging disability due to osteoarthritis since
October 1, 2006.   After Plaintiff's claim was denied, she requested a hearing.
Administrative Law Judge E. James Gildea ("ALJ") presided over the September 24, 2008,
videoconferencing in which he heard testimony from Plaintiff and a vocational expert,
Thomas Dunleavy.  In a decision dated November 28, 2008, the ALJ denied benefits.  The
Appeals Council denied Plaintiff's request for review of the ALJ's decision.

Plaintiff timely filed this action for judicial review of the Commissioner's decision.
The case was referred to Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636.
The parties filed cross-motions for summary judgment.  In his Report and Recommendation

(R&R), Magistrate Judge Binder recommended that Plaintiff's Motion for Summary Judgment be denied and that Defendant's Motion for Summary Judgment be granted.

Plaintiff timely filed objections to the R & R.  For the reasons stated below, the Court **ADOPTS** the Magistrate Judge's recommendation and **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

## II. STANDARD OF REVIEW

In cases where a magistrate judge has submitted a report and recommendation and a party has properly filed objections to it, the district court must conduct a *de novo* review of those parts of the report and recommendation to which the party objects.  28 U.S.C. § 636(b)(1).  Review of the Commissioner's decision is limited to determining whether the findings are supported by substantial evidence and whether the Commissioner employed proper legal standards in reaching his conclusion.  Brainard v. Sec'y of HHS, 889 F.2d 679, 681 (6th Cir. 1989).  "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."  Casey v. Sec'y of HHS, 987 F.2d 1230, 1233 (6th Cir. 1993).  A decision that is supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion.  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (internal quotation omitted); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

When determining whether the decision is supported by substantial evidence, the court must take into consideration the entire record, including "whatever in the record fairly detracts from its weight."  Mullen, 800 F.2d at 545.  When the Appeals Council declines to

review the ALJ's decision, the court's review is limited to the record and evidence before the ALJ. Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993). The court may not review the evidence *de novo*, make determinations of credibility or weigh the evidence. Brainard, 889 F.2d at 681. Credibility determinations by the ALJ should be accorded deference by the reviewing court. Mullen, 800 F.2d at 545 (internal quotation omitted).

## III. ANALYSIS

To establish a compensable disability under the Social Security Act, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382(a)(3)(A). The claimant bears the ultimate burden of establishing a disability within the meaning of the Social Security Act. Casey, 987 F.2d at 1233.

Disability claims are evaluated through a five-step sequential process. 20 C.F.R. § 404.1520. See also Kirk v. Sec'y of HHS, 667 F.2d 524, 529 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). The burden of proof to show a disability is on the claimant through the first four steps of the process. If a claimant meets this burden, the fifth step shifts the burden to the Commissioner. Preslar v. Sec'y of HHS, 14 F.3d 1107, 1110 (6th Cir. 1994).

The first step of the process examines whether the claimant is currently engaged in substantial gainful activity. If the claimant is so engaged, she is not disabled under the guidelines. The second step examines whether the claimant has a severe impairment

which significantly limits her ability to perform work-related functions.  Id.  When a severe impairment is found, the third step requires comparison of the impairment to those impairments listed in Appendix I, 20 C.F.R. § 404, Subpt. P, to determine whether, on the medical evidence alone, the claimant is disabled.  Id.  If the claimant is not disabled under the third step, the fourth step requires a determination of whether the claimant can perform relevant past work.  Should the claimant be unable to perform relevant past work, the fifth step shifts the burden to the Commissioner to establish that the claimant has transferable skills which enable her to perform other work in the national economy.  Id.

Here, the ALJ determined that Bruce had not been engaged in substantial gainful activity and that she had a severe impairment–osteoarthritis.  He further determined that her impairment when considered alone or in combination did not meet or exceed the criteria of the Listing of Impairments.  (Admin. Rec. 49).  The ALJ concluded that the medical evidence did not indicate that Plaitniff's osteoarthritis resulted in "the inability to perform fine and gross movements effectively," (Admin. Rec. 50), and Bruce maintained the functional capacity to perform her past relevant work as an office manager as it actually was performed or generally is performed (Admin. Rec. 52).  Accordingly, the ALJ found Plaintiff was not disabled.

Here, Plaintiff objects to the Magistrate Judge's conclusion that substantial evidence supports the ALJ's determination that Plaintiff can perform past relevant work and is not disabled for several reasons.  First, she asserts that the ALJ never referenced the reports and findings of the treating rheumatologist, Dr. Anwar, and disregarded the medical opinion of her treating physician Dr. Scott, Reiter, and instead credited a residual functional

4

capacity test performed in May 2007.

Second, Plaintiff challenges the ALJ's conclusion that she retained the ability to perform her past relevant work or a full range of light work. The ALJ never identified any jobs or asked the vocational expert whether those jobs would require frequent use of the hands and wrists. The merits of the objections are discussed below.

### A. Treating physician's opinion

"The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition." Wakemen v. Comm'r of Soc. Sec., No. 1:09-cv-1111, 2011 WL 335311 (W.D. Mich. Jan. 7, 2011); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004); Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Deference is not the standard, however, unless the particular opinion "is based upon sufficient medical data." Miller v. Sec'y of HHS, 1991 WL 229979 at *2 (6th Cir., Nov.7, 1991) (citing Shavers v. Sec'y of HHS, 839 F.2d 232, 235 n. 1 (6th Cir.1987)). Consequently, an ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. See Cohen v. Sec'y of HHS, 964 F.2d 524, 528 (6th Cir. 1992). When an ALJ decides not to give controlling weight to the medical opinion of a treating source, he is required to explain why in his narrative decision. 20 C.F.R. § 404.1527(d)(2); Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir.1987)

5

(recognizing that an ALJ is not bound by the opinions of a plaintiff's treating physicians, but is required to set forth some basis for rejecting these opinions).

Plaintiff challenges the ALJ's failure to articulate what weight, if any, he accorded the medical opinions of the treating physicians.  The Court finds this objection lacks merit. Here, the ALJ had no obligation to discuss the weight given because the treating physicians offered diagnoses, not opinions about the severity of Plaintiff's impairments or her limitations.

Pursuant to 20 C.F.R. § 404.1527(a)(2),

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

A mere diagnosis does not establish a severe impairment or the existence of a functional limitation.  As the ALJ noted, despite Plaintiff's testimony of totally disabling symptoms, "the record in this case reveals no restrictions recommended by the treating doctor." (Admin. Rec. at 50).  In fact, one of Plaintiff's treating physicians, Dr. Reiter, explicitly declined to render an opinion about Plaintiff's ability to work.  (Admin. Rec. 192).  In sum, because the treating physicians never imposed any limitations, the ALJ had nothing to discuss.

Further, Plaintiff's reliance on a medical diagnosis to undermine the ALJ's assessment of her ability to work is misplaced.  A diagnosis, standing alone, simply is not very useful to the ALJ's task of determining Plaintiff's residual functional capacity (RFC).  In April 2008, Dr. Reiter noted that he was not qualified to make a

6

determination of Bruce's disability, which was best accomplished through functional capacity testing." (Admin. Rec. 192). Plaintiff maintains that the ALJ's reliance on a 2007 residual functional capacity test, performed before Dr. Reiter's recommendation is misplaced. The Court disagrees. The ALJ properly considered the entire record to reach his finding that Plaintiff had the residual functional capacity to perform her past relevant work, including her testimony and the testimony of the vocational expert.

### B.  Past Relevant Work/Full Range of Light Work

Bruce challenges the ALJ's conclusion that despite that fact that she had severe or marked osteoarthritis changes in her hands, she could return to her job, which required frequent use of her hands. The vocational expert testified Plaintiff's past work was performed at the sedentary exertional level, and the ALJ concluded she could perform her past work "as actually and generally performed." (Admin. Rec. 52). In challenging this conclusion, Plaintiff argues that she retired prematurely because of pain in her hands. Contrary to Plaintiff's characterization of the basis for her retirement, her testimony shows that her employer was dissatisfied with her job performance and her attitude. Further, the ALJ determined that Bruce's statements about the "intensity, persistence, and limiting effects" of her symptoms were not credible to the extent they were inconsistent with the RFC assessment, the lack of restrictions by her treating doctors, and her reported daily activities.

The Court finds no basis for rejecting the conclusion that Bruce is capable of performing her past relevant work as an office manager. An ALJ may obtain evidence about the requirements of a claimant's past relevant work from many sources. The ALJ may ask the claimant regarding what was required from previous jobs." 20 C.F.R. §

7

404.1560(b)(2).  An ALJ also may use the services of a vocational expert or other resources, such as the DICTIONARY OF OCCUPATIONAL TITLES (DOT) for the information needed to assist in the determination of whether the claimant is capable of performing her past relevant work, in accordance with her RFC.  20 C.F.R. § 404.1566.  Here, Dunleavy testified that according to the DOT, her job required no more than frequent handling and fingering.  (Admin. Rec. 39).  In sum, the ALJ's decision is supported by the record.

Finally, Plaintiff objects to the ALJ's finding that she could perform the full range of light work.   Bruce asserts that the ALJ did not identify any specific jobs, and further never asked the vocational expert whether more frequent handling would be required.

Although Plaintiff's assertion that the ALJ neglected to ask the Vocational Expert about light work is accurate, the Court finds this argument is immaterial, in light of the ALJ's conclusion that Plaitniff could perform her past relevant work as an office manager.  The five-step sequential process ends at the fourth step when a claimant is about to preform past relevant work.

In addition, Plaintiff did not raise this issue in her initial brief.   Issues not raised in a claimant's initial brief are generally waived for purposes of review.  See Young v. Sec'y of HHS, 925 F.2d 146, 149 (6th Cir. 1990)

## IV.  CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's recommendation and **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

s/Marianne O. Battani
HON. MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATE: March 4, 2011

## CERTIFICATE OF SERVICE

Copies of this Opinion and Order were mailed to counsel of record on this date by e-filing and/or ordinary mail.

s/Bernadette M. Thebolt
Case Manager

9